Alright, our first case of the morning is People v. Peacock for the appellate, Mr. Bayer, and for the apple, Ms. Ambrose. You may proceed. Your Honors, the appeal in this case involves decisions made by the trial court, which I submit were made on the basis of the trial court's aggravation due to the defendant's failure to appear before the trial court. The genesis of the trial court's actions began May 6, 2011, when it made a finding for the People and against the defendant on a petition to revoke probation and, in addition, sentenced the defendant to 364 days incarceration. Mr. Bayer, wasn't the revocation proceeding heard on March 30? Your Honors, I've reviewed the docket sheet, and the docket sheet on the 30th does not specifically make any ruling or any statement finding in favor of the People. But there was a recording done that day. Well... But that transcript's not in the record. It's not in the record. Why is that? I have operated on the assumption that the ruling that the court made on May 6 was the order of the court. There is a ruling on the docket sheet that specifically states that the defendant violated the sentence, which is the original sentence I think the trial court's referring to, and ruled in favor of the People and against the defendant. I'm assuming that's on the petition to revoke probation. But the PSI, the court's order on May 6, the recording of the proceedings on May 6, indicate that there was a revocation hearing on March 30. But we don't have a transcript of that hearing, even though there's a record of it somewhere. The court reporter or a digital recorder. Well... And the PSI reflects that the revocation hearing occurred on March 30 in absentia. It seems important to me. I would have wanted to see the transcript for March 30. It's difficult to make a ruling in this case based on what we have before us. Well, I think the docket sheet reflected the court's orders. The state had an opportunity in this case to obtain that additional transcript. But who's got the burden on appeal? You're the appellant, aren't you? No, I'm the appellant, but I think the docket sheet contains the court's orders. Well, what if the docket sheet conflicts with what the court actually said during the hearing on March 30? What controls? Oh, that's a good question. I think the docket sheet controls. The docket sheet is a publication of what the court's order. So if the clerk mistypes the docket sheet and misrepresents what the court actually did and there's a record of the proceedings, you think the docket sheet controls? If there's a mistake, it could be amended non-protonically. That's a different issue than saying, well, maybe the real order is recorded. I mean, you could never rely on the docket sheet if you're going to take the position that you have to go back to the recording to see what really happened in every case. Well, in most cases, we get the record of what actually happened. So we don't rely on the docket sheets. We read the record. Go ahead with your argument. I don't want to take all your time. Okay. After the May 6th order, the defendant filed three motions related to that order. One was a motion for a new trial based on procedural due process. One was a motion to dismiss based on the substance of the allegations in the petition to revoke. And one was a motion for reconsideration of the sentence based on ineffective counsel that represented the defendant at that time. Without notice or hearing, then, on June 1 of 2011, the trial court struck the aforesaid pleadings on the basis that they failed to comply with Supreme Court Rule 604D, which deals with withdrawing a guilty plea in a criminal case and asking for a new trial. The defendant then filed a motion to vacate that order on the basis, among other things, that the petition to revoke is more in the line of a civil proceeding and not a criminal proceeding, which 604D relates to. Again, without notice or hearing, the trial court vacated the June 1, 2011, order but then entered an order denying all of the defendant's motions on the merits. Now, the substance of procedural due process is the requirement that there be given notice and an opportunity to be heard. Those orders were entered by fiat, and indeed, as set forth in the record, counsel attempted to contact the judge's clerk to obtain settings on those motions, but it never occurred, and those orders were just entered on the docket sheet by the trial court. Now, the state's taken the position that since the defendant failed to appear in the trial court, that she has forfeited her right to argue any subsequent issues before the court. I would submit that that's contrary to the statute that relates to this type of circumstance, which is 725 ILCS 5-115-4.1-D, which in substance provides that a defendant who is absent from trial, post-trial, or sentencing proceedings does not forfeit his right to be present at all remaining proceedings. And that's exactly the type of circumstance we have in this case. Now, what the trial court could have done in this matter, if it wanted to require the appearance of the defendant, was to hold the hearing on those motions in abeyance pending the defendant's appearance in court. Was there some reason she wasn't there? She was not there on May the 6th when the court entered the orders that were appealing here today. Some reason she wasn't there? I don't know the reason really for that. I can speculate, but I don't know the real reason. Now, in addition to the claim of disentitlement, which the state has attempted to argue, they've also attempted to claim that the only basis for attacking a judgment where there's non-appearance is 725 ILCS 5-115-4.1e, which provides that a defendant can obtain a new trial if they can show that their failure to appear was without the defendant's fault and due to circumstances beyond the defendant's control. However, as I've cited in People v. Starks, that statute clearly is merely an additional means of attacking a conviction or sentence and does not prevent a direct appeal from a denial of motion such as we have here. The allegations of the petitioner revoked specifically deal with the fact that the defendant tested positive for cocaine on November 10, 2009, that she only performed two hours of public service and failed to give verification of the performance of an additional 138 hours of public service, and that she failed to give probation a copy of her drug and alcohol evaluation. Now, the motion to dismiss that the defendant filed in this matter deals with the substance of those allegations. But Mr. Behr, all that was filed after the March 30th hearing. I think it relates to the May 6th hearing. When I look at this record, taking it as a whole, it appears to me there was a revocation hearing on March 30th. And then the sentencing was set for May 6th. A PSI was ordered on March 30th. There was a PSI prepared in this case. Or nearly, a court doesn't order, a trial court doesn't order a PSI unless they've made a determination that they found a violation. Well... Your Honor, I think the defendant's entitled to rely on the docket sheet that the trial court entered. They didn't enter an order finding in favor of the State and against the defendant on the petition to revoke on March 30th. It's not in the docket sheet. Well, sometimes. But a trial court might do also, Mr. Behr, find that there was a violation, order the PSI, and determine at sentencing whether they're going to revoke or not. The fact that you find a violation doesn't necessarily mean you're going to revoke the probation. You might continue the probation, that's a sentencing option. That's a possibility. To address the specifics of the petition to revoke, the defendant in fact performed 164 hours of public service work, and that was performed even prior to the filing of the petition to revoke. So that is mitigated at the least. She also provided a release to the probation office to obtain her alcohol and drug assessments from the Prairie Center. The Prairie Center did assessments on February 1st, 2010, and September 13th, 2010. Those are acknowledged as being received on February 16th, 2011, by the probation office in its recent report. So those were in the hands of the probation office prior to any determination made whether to take it to be March 30th or May 6th by the trial court. In addition, I think the pre-sentence report also states that the defendant in fact provided copies of those assessments to the probation office on February 16th, 2011. So the assessments were in the hands of the probation office prior to any adjudication. I think the real issue and point of fact that provides any problem here for the defendant was the allegation of cocaine usage on November 10th, 2009. The petition to revoke was filed 13 and a half months after that violation. In accordance with the pre-sentence report itself, she tested negative on December 22nd, 2009. Then she engaged in a whole series of tests through the Prairie Center from March 29th, 2010 to March 18th, 2011 in which she tested negative for illegal drug usage. She also took a blood alcohol test from November 4th, 2010 through March 18th, 2011 in which she tested negative for alcohol. Under the due process requirements, a state must file a petition to revoke within a reasonable time after the violation that's alleged to have occurred. In the U.S. v. Tyler case which I cited in my brief, they supported the finding that a delay of 14 months, the level was 14 months, was unreasonable delay. We have 13 and a half months in this case. I think what should be taken into account in addition to that is that the defendant has continually tested negative for alcohol and drug freedom since that time. So that provides an additional consideration which I think should go into the due process consideration of unreasonable delay. Now, with respect to the issue involving the reconsideration of the sentence, that's based on the claim of ineffective counsel. And as I've set forth, I think the state may have too, but basically there's a two-pronged test for that as a general proposition. And that is the attorney has failed to comply with the standard of reasonableness that an attorney is required to comply with. And that those errors, having occurred, create a reasonable possibility that the result could have been different. And I would point out that there's a whole monopoly of things that the defendant's counsel at that time did not do. In fact, the record clearly states in the transcript that he presented no evidence. He didn't present any evidence of the release that the defendant gave to the probation office to obtain her assessments. He didn't present any evidence of the two assessments that were in fact taken. He didn't present any evidence of her treatment hours. He didn't present any evidence of her public service completion. He didn't present any evidence of her negative drug screens. He didn't present any evidence of her negative blood alcohol test. I think at some point there, that's not reasonable representation, and I think it rises to the level of ineffective counsel. And therefore, I think she was denied due process in her sentencing and that the sentencing should, therefore, be reversed in addition to the basis of a federally given notice and opportunity to be heard. Mr. Klain, out of jail now. Yes. Does the court have any other questions? We'll have additional time on rebuttal, sir. Ms. Ambrose. May it please the court, Mr. Baer has said that Judge Kloss was aggravated and he certainly had a right to be. The defendant had the temerity to go out and hire an attorney while she was at large to file these post-trial motions and even sign the verification herself, and yet she decided she wasn't going to appear or turn herself into the authorities while this warrant was outstanding for her arrest. He gave her more than she was entitled to. She really had no right to have her motions considered at all because she was not going to submit herself to the authority of the court. So under the disentitlement doctrine, she certainly has to take her chances by turning herself in and then going ahead and filing her post-judgment motions, but she doesn't get to stay on the lam and go out and have her attorney appear in her stead. I think Judge Kloss was very generous by even considering these motions on the merits. And this court certainly on appeal has invoked the disentitlement doctrine, and I'm not saying that she was not entitled to an appeal. I'm saying that she was not entitled to have her motions heard on the merits until she turned herself in. There was a question before about the absence of a transcript of the March 30th hearing, and if there's a conflict between the common law record and the reported proceedings, the reported proceedings controls, not the common law record. And of course it's his burden or her burden, excuse me, to present the entire record and for the court to examine. Also, I can well understand why Walter Ding did not present a copy of the assessment from Ferry Center because the defendant told the counselor there that she was continuing to use alcohol, four to six beers, I think drinking four to six beers a day, seven months into her sentence of probation. She was also using cocaine, a few lines of cocaine once a month, and she last used coke, she said, in December of 2009. So she also had attempted intensive outpatient treatment, but she was unsuccessful. In other words, she was pretty much an abysmal failure on probation. And even though she was alcohol and cocaine dependent, she decided she became disillusioned with Ferry Center. And also one of their staff members happened to see her out drinking in public in July of 2010, which conflicts with her representation to them that she stopped drinking in January of 2010. So her admissions of drinking and using drugs while she's on probation, and she's on probation because she was severely intoxicated with two of her kids in her car and pled to DUI. She didn't plead to the per se count because she was like well over the per se limit. So you have her not taking this seriously even though she's been given a significant chance. She's had probation numerous times before. I can well understand why Dean, if he was in possession of these documents, would not present them to the court because the court would become even angrier, I would think, and enhance her sentence. So her suggestion that this November 10, 2009 positive test for cocaine was an isolated event kind of falls short. It certainly conflicts with her other statements about her cocaine usage and her alcohol usage. Also, she didn't take the public service work seriously either. She didn't complete that until well past the deadline that she was supposed to, I think. And then she came up with these documents that said she performed work, but they didn't say when she did this public service work. And it was pretty nebulous about when she performed these tasks. And from the court statements, you can infer that it found like more than one violation because the court said at sentencing that it had found one of the violations was her cocaine usage. And again, the absence of a transcript leaves us kind of in the dark, but you can certainly, the presumption is that everything that the court did on the 30th was correct and that it may very well have found more than one violation. Also, counsel had complained about Dean not acquiring the records from the juvenile case about when she was submitting to urine tests. If he was not her attorney, and unless she provided those documents to him, he would not have access to those. The juvenile court records would be confidential. And also there has been a complaint about the time lapse between her use of cocaine in November and the state waiting until December of 2010 to file the petition to revoke. Well, there was actually a two-month period between the October 30th deadline for her completing her public service work and the filing of the petition to revoke. So that was not certainly an inordinate delay. And she hasn't said how she was prejudiced. So that two-month delay at the state, one of the grounds for revocation was that she had not completed her public service work. I find no abuse of discretion if this court is going to look at what Judge Kloss, I think, gave her much more than she was entitled to. I'd welcome any questions. Thank you. I don't think so. Mr. Barrett? Counsel states that she's not entitled to a hearing until she appears. I don't really dispute that. The problem is it was wrong for the trial court to dismiss the defendant's motions. I think the trial court had a right to hold those motions in abeyance, pending the defendant's appearance. That's a different issue than just dismissing those motions by fiat. As far as the claims of the problems with her drinking and drug usage, that was basically ended in November. As far as the cocaine usage in January of 2010 on the alcohol usage. So that was prior to the time period that the petition to revoke addresses. It was not during that time. So that was a prior occurrence. The fact of all of the negative tests after that speak to the fact that she was dealing with it in a very positive way. I think the allegations in the motion to dismiss itself state that the public service work was performed prior to the filing of the petition to revoke. Thank you. All right. Thank you, counsel. I will take this matter under advisement and be in recess until the readiness of the next case.